IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**TOMMY LEE RADFORD**                                                                       **PLAINTIFF**
**ADC #89900**

v.                              No: 4:23-cv-00636-LPR-PSH

**KIAMERA M. KING,** *et al.*                                                         **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Tommy Radford, an Arkansas Division of Correction inmate, filed this *pro se* civil rights complaint raising Eighth Amendment claims against defendants Corporal Kiamera M. King, Sergeant Tecolia West, and Corporal Jerlecia Wilson (the "ADC Defendants") and LPN Stacey Ballon. In his most recent

amended complaint, filed on August 18, 2023, he alleged excessive force, failure to protect, retaliation, and denial of medical treatment claims. Specifically, he claims that King physically and verbally abused him at the Cummins Unit on June 9, 2022, while West and Wilson watched and failed to intervene, stating "beat his punk ass gurl. He snitching on Sgt. Q. Bealer." Doc. No. 7 at 5-6. Radford further alleged that King, West, Wilson, and LPN Ballon denied him medical treatment afterwards. *Id.* at 7. King subsequently charged Radford with a disciplinary violation charging him with assaulting her (*see* Doc. No. 27-1 at 1-6), but Radford did not mention the disciplinary in his amended complaint (Doc. No. 7).

Before the Court are motions for summary judgment, briefs in support, and statements of undisputed facts filed by Ballon (Doc. Nos. 24-26) and the ADC Defendants (Doc. Nos. 27-29). These defendants seek judgment as a matter of law on grounds that Radford did not exhaust his administrative remedies as to his claims against them before he filed this action. Radford filed several pleadings in response (Doc. Nos. 32-1, 37-38). The ADC Defendants filed a reply (Doc. No. 34). At the Court's direction, Ballon and the ADC Defendants supplemented the record with additional evidence. *See* Doc. Nos. 45-47). Radford subsequently filed a declaration (Doc. No. 48). The motions are now ripe for decision, and for the reasons described herein, the undersigned recommends that the pending motions for summary judgment be granted.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but instead must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A dispute is

genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Analysis

The defendants argue that Radford's claims against them should be dismissed because he failed to exhaust his administrative remedies before he filed this lawsuit. In support of her motion, Ballon submitted a declaration by Brandy Johnson, the ADC's Medical Grievance Coordinator, along with copies of three medical grievances filed by Radford (Doc. No. 26-1); and a copy of the ADC's grievance procedure, Administrative Directive 19-34 (Doc. No. 26-2). The ADC Defendants submitted a copy of the ADC's grievance procedure (Doc. No. 29-1) and a declaration by Terri Grigsby Brown, the ADC's Inmate Grievance Coordinator with a copy of Radford's grievance history and copies of two non-medical grievances attached (Doc. No. 29-2). At the Court's direction, Ballon submitted a more complete copy of grievance CU-22-00549 (Doc. No. 46-1 at 3-5), and the ADC Defendants submitted copies of two major disciplinaries issued to Radford on June 9, 2022 (Doc. No. 47-1).

A.     *Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014). Exhaustion under the PLRA is mandatory. *Jones v. Bock*, 549 U.S. at 211; *Hammett v. Cofield,* 681 F.3d 945, 949 (8th Cir. 2012). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA does not prescribe the manner in which exhaustion occurs. *See Jones v. Bock*, 549 U.S. at 218. It merely requires compliance with prison grievance procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy, Administrative Directive 19-34, inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 26-2 at 5. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id.* at 1-2, 7. Inmates are to "specifically name each individual involved" so that the ADC may complete a proper

investigation and response. *Id*. at 5. The policy provides that only one grievance form

> can be submitted per grievance and only one problem/issue should be stated in the grievance, not multiple problems/issues. An inmate must use a separate form for each issue. Only one issue will be addressed. Additional problems/issues contained in the grievance will not be considered as exhausted.

*Id*. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 7.

A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id*. at 7-8. If the inmate is not satisfied with the resolution or the problem solver does not respond within three working days, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id*. at 8. If a formal grievance is medical in nature, it is forwarded to the appropriate medical personnel for response. *Id*. at 10. If the inmate receives no response, or if the inmate is not satisfied with the response, the inmate can appeal to the Deputy Director for Health and Correctional Programs within five working days. *Id*. at 12-13. Inmates are instructed that new issues, requests, or names which were not part of the original grievance will not be addressed on appeal. *Id*. at 12. Once the Deputy Director responds or the appeal is rejected, the grievance process is complete. *Id*. at 13. According to the ADC's grievance policy, the entire grievance

procedure should be completed within 76 working days absent an extension or unforeseen circumstances. *Id.* at 14. The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit. *Id.* at 19.

**B.    *Radford's Medical Grievances & Exhaustion as to Ballon***

According to medical grievance coordinator Johnson's declaration, Radford submitted three medical grievances between June 9, 2022 (the date of the incident he describes in his complaint) and July 10, 2023 (the date he filed this lawsuit).[1] Doc. No. 26-1 at ¶ 4. Those grievances are: CU-22-00521, CU-22-00549, and EAM-23-01010. *Id.*

In EAM-23-01010, filed more than a year after the June 9, 2022 incident described in this lawsuit, Radford grieved his medical treatment at the East Arkansas Regional Unit. Doc. No. 26-1 at 9-11. That grievance is not relevant to Radford's claims in this case.

---

[1] Johnson actually refers to August 19, 2023, the date Radford filed his amended complaint, in her declaration. Doc. No. 26-1 at ¶ 4. For consistency, the Court uses the date he filed this lawsuit, which is the operative date for exhaustion purposes. *See generally Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003) (exhaustion of administrative remedies must occur before a lawsuit is filed).

In both CU-22-00521 and CU-22-00549, Radford grieved that he was wrongfully charged a $3.00 copay after the June 9 incident. Those grievances are described below.[2]

**CU-22-00521**. On June 21, 2022, Radford submitted this grievance, stating:

> I was inadvertently charged a $3.00 dollars co-payment for a incident were I was assaulted in hand-restraints or perhaps a chronic care issue but at any rate, I shouldn't be charged over something that I had no control over. Therefore please reimburse $3.00 dollars funds deducted from account on 6-11-22 co-pay charge incorrect.

Doc. No. 26-1 at 6. Radford proceeded to Step Two and received the following response:

> June 9, you were seen by the nurse for a Restrictive Housing Screening. The nurse noted you were seen in East Building after spitting on security, that you were alert and oriented with clear speech and injuries were noted. You were seen June 10, by the nurse, complaining of cuts inside your mouth and right arm, swollen and painful wrist and a headache. She noted your condition was stable and no treatment was indicated.
>
> You received a Major Disciplinary on June 9, and were found guilty of Throwing/Ejecting of Bodily Fluids/Excrement Striking Person, Battery – Use of Force on Staff, Failure to Obey Order of Staff and Assault – verbal or written threat.
>
> Per policy, there will be a fee for each inmate initiated request for health care services unrelated to a condition being followed at a chronic care clinic.
>
> You submitted the request which led to your June 10 visit; therefore per policy, your fee is valid.

---

[2] Grievances are transcribed verbatim without any corrections for misspellings or mistakes.

>Your grievance has no merit.

*Id.* at 4.  Radford appealed, stating, "I disagree since I was in restraints & shouldn't be charged a medical $3.00 co payment.  Please reimburse." *Id.*  His appeal was rejected because he did not submit the proper attachments.  *Id.* at 3.

>**CU-22-00549.**  Radford submitted this grievance on June 30, 2022, stating:
>
>I have been inadvertently charge a second $3.00 dollars medical co-pay on 6-30-2022  See date of sick call I only enquired about being charged in grievance No. #CU-22-00521 these are the same incidents and I never should have been charge on neither medical co-payments especially this (1) where $3.00 was recently withdrawed on 6-30-2022 please reimburse funds

Doc. No. 46-1 at 3.  He proceeded to Step Two and received the following response:

>You were seen June 29, at sick call, stating you were physically assaulted June 9 by Corporal King and punched in your facial area with her closed fist repeatedly and you were still having head and back aches.  You were ordered Tylenol 325mg twice a day for three days.  Per policy, there will be a fee for each inmate initiated request for health care services, unrelated to a condition being followed at chronic care clinic.  Therefore, your fee is valid and your grievance has no merit.

*Id.* at 4.  According to the appeal response, Radford appealed, explaining that he should be reimbursed because Officer K. King initiated the incident, not him.[3]  *Id.*

---

[3] The copy of CU-22-00549 provided by Ballon does not include a copy of Radford's appeal.  And the appeal response is neither signed nor dated by the deputy director.  In a declaration accompanying the copy of grievance CU-22-00549, Deshona D. Collins, the ADC's Assistant Inmate Grievance Appeal Coordinator, stated that she was unable to locate a signed copy of the Deputy Director's decision on appeal.  She submitted the copy stored in the ordinary course of business in the department of corrections' electronic record system.

at 5. The appeal response upheld the medical department's response and found his appeal without merit. *Id.*

Radford did not name or describe Ballon in either grievance CU-22-00521 or CU-22-00549, and did not complain of any lack of medical treatment in either of these grievances. His grievances focused on the ADC's charging him $3.00 for medical visits. He therefore did not exhaust his administrative remedies with respect to his claim that Ballon failed to treat the injuries he alleges he sustained on June 9, 2022. Ballon is therefore entitled to summary judgment.

### C.     *Radford's Non-Medical Grievances & Exhaustion as to the ADC Defendants*

According to Inmate Grievance Coordinator Brown, Radford submitted two non-medical grievances complaining of physical abuse between June 9, 2022 (the date of the incident with King) and July 10, 2023 (the date he filed this lawsuit). Doc. No. 29-2 at ¶ 27. *See also* Doc. No. 29-2 at 6-10 (list of grievances submitted by Radford). Those grievances are: CU-22-00650 and CU-22-00664. In grievance CU-22-00650, Radford grieved nonparty Lieutenant C. Branham's actions on July 28, 2022, complaining that Branham used excessive force against him while escorting him. *See* Doc. No. 29-2 at 11-16. In grievance CU-22-00664, he grieved the actions of an unnamed officer, Corporal Wells, and Branham, none of whom are

defendants in this matter, on the same date. *Id.* at 17-20. In this grievance, Radford alleged that Wells and Branham threatened him because he had reported King's actions and that Branham then used excessive force against him. *Id.* Neither of these grievances describe the June 9 incident with the ADC Defendants or name any of the ADC Defendants, and Radford does not identify any non-medical grievance that does so.[4] Radford claims the actions of July 28 by non-defendants were taken in retaliation for the June 9 incident with King.[5] *See* Doc. No. 37 at ¶¶ 4,8. Grievances concerning the actions of other individuals in a separate incident cannot serve to exhaust his claims against the ADC Defendants, even if the two incidents are tangentially related.

Radford argues that he grieved King's actions in medical grievance CU-22-00549, described above. *See* Doc. No. 32-1 at ¶ 6. However, that grievance concerns a $3.00 copay he believes was wrongfully charged to him. The formal grievance does not name King or contain a claim that King used excessive force against him. It also does not name the other ADC defendants or contain a claim that they failed to protect him or retaliated against him. Radford mentions King in his grievance

---

[4] Radford attached copies of three grievances he submitted at the East Arkansas Regional Unit, complaining about the loss of his legal materials when he was transferred on August 25, 2022. *See* Doc. No. 32-1 at ¶ 7 & pp. 9-11  He does not explain what specifically was lost or how it might be relevant to this case or the defendants' motions.

[5] Radford does not explain why these non-defendants were motivated to retaliate against him on King's behalf.

appeal, stating he should be reimbursed his copay because King initiated the incident on June 9, which necessitated his request for medical treatment. First, even assuming Radford intended to assert a grievance against King related to the June 9 incident, the ADC grievance policy provides that new claims cannot be brought in an appeal and will not be addressed. Doc. No. 26-2 at 12. Second, Radford does not actually grieve that King used excessive force against him in the grievance appeal. Instead, he states that because King initiated the June 9 incident, he should not have to pay the copay. *See* Doc. No. 46-1 at 5. Accordingly, CU-22-00549 does not serve to exhaust Radford's claims against King. Nor does it exhaust his claims against the other defendants in this matter.

Radford also argues that he could not grieve the June 9 incident because disciplinaries and retaliation are non-grievable under the ADC's grievance procedure. *See* Doc. No. 32-1. The ADC's grievance procedure specifically provides that claims of retaliation are grievable. *See* Doc. No. 26-2 at 3. Likewise, claims of excessive force, failure to protect, and deliberate indifference to medical needs are grievable. *Id.* And while the ADC's grievance procedure does not allow disciplinaries to be grieved, *id.*, Radford does not challenge the June 9 disciplinary in this lawsuit. The grievance procedure was available to Radford – he could and should have filed a grievance alleging that King used excessive force against him on June 9, 2022, that Wilson and West failed to intervene, that the ADC defendants'

actions on June 9 were retaliatory, and that all of these defendants failed to obtain medical treatment for him after the incident.

Radford finally argues that he exhausted his administrative remedies as to the ADC Defendants by appealing the disciplinary he received in connection with the June 9 incident.[6] *See* Doc. No. 47-1 at 1-6 (Major Disciplinary relating to Incident Report #2022-06-088). In Incident Report #2022-06-088, King alleged that Radford kicked her and spit in her face while she was escorting him to his cell. Doc. No. 47-1 at 1. She acknowledged that she reacted by striking him in the face with a closed fist. *Id.* Radford denied her allegations but was found guilty of the following rule violations: Throwing/Ejecting of Bodily Fluids/Excrement Striking Person; Battery – Use of Force on Staff; and Failure to Obey Order of Staff. *Id.* at 3. Radford appealed to the warden, disciplinary hearing administrator, and director. *Id.* at 4.

---

[6] Radford states that he appealed two disciplinaries he received on June 9, 2022. *See* Doc. No. 32-1 at 1-3; Doc. No. 37 at 3-4; Doc. No. 38 at 2. Radford did not attach a copy of any disciplinary or disciplinary appeal relating to the June 9 incident to his complaint or responsive pleadings. *See* Doc. No. 7 at 9 (copy of disciplinary charging Victor Bottorff on May 28, 2022, for allegedly spitting on King); Doc. No. 37 at 5 (an appeal dated April 24, 2024). Radford claims he lost copies of these disciplinary appeals when he was transferred to the East Arkansas Regional Unit on August 22, 2022. Doc. No. 32-1 at ¶ 7; Doc. No. 38 at 2. The Court therefore directed the ADC Defendants to supplement the record with copies of any disciplinaries issued to Radford on June 9, 2022 incident, and they have done so. *See* Doc. No. 45 & 47-1. Only one of those disciplinaries concerned the incident with the ADC Defendants (Incident Report #2022-06-088). *See* Doc. No. 47-1 at 1-6.

The guilty verdicts on these three charges were upheld at all levels of appeal. *Id.* at 4-5.

The ADC Defendants provided a declaration by Thomas Rowland, the ADC's Internal Affairs/Disciplinary Hearing Administrator (Doc. No. 47-2). Rowland explained that he reviews disciplinaries on the second level of appeal (after the warden and before the director). *Id.* at ¶ 3. He further explained that the disciplinary appeal process only concerns the allegations against an inmate, and disciplinary reviews do not address any inmate complaints against staff that arise during the disciplinary process. *Id.* at ¶¶ 4-6. According to Rowland, an inmate must use the grievance procedure to lodge complaints against staff. *Id.* at ¶¶ 7-9. This is also made clear in the ADC's grievance policy. *See* Doc. No. 26-2 at 2 (explaining that a grievance may be submitted by an inmate regarding "[a]n action of another employee(s) . . . that personally affects the inmate; or . . . [a]n incident occurring within the facility that personally affects the inmate."). Radford cannot rely on statements he made in defense of the disciplinary he received, or in his appeal of that disciplinary conviction, to serve as a grievance of his claims. He was required to use the ADC's grievance procedure but failed to do so. He therefore did not exhaust his available administrative remedies with respect to his claims against King and the other ADC Defendants. They should therefore be awarded summary judgment.

## IV.  Conclusion

As explained herein, Radford did not submit a grievance describing his complaint allegations against any defendant before he filed this lawsuit.  The Court therefore recommends that the defendants' motions for summary judgment be granted and Radford's claims against the defendants be dismissed without prejudice due to his failure to exhaust available administrative remedies.

SO RECOMMENDED this 19th day of August, 2024.

_____
UNITED STATES MAGISTRATE JUDGE